# MARIA MAYSONET, Plff.,

*v.*

# LA' SUCESION DE PEDRO ESTEBAN ZAMORANO, Dfts.

San Juan, Law, No. 1278.

### SUIT AGAINST ESTATE OF DECEDENT.

Inheritance—Liability of Heir.

1. An heir inheriting property under the civil law is liable for the decedent's debt unless he has claimed the benefit of inventory.

Succession—Creditors.

2. Under the Roman law the heir was regarded as continuing the person of the deceased and therefore liable for his debts. Later the heir was given the right of inspecting the inventory and deciding whether he would accept the estate or not. The Porto Rican practice is a mixture of civil and common law principles.

Opinion filed May 5, 1919.

*Messrs. José de Guzman Benitez* and *Charles Hartzell* for plaintiff.

*Messrs. H. R. Francis* and *de Jesus* for defendants.

HAMILTON, Judge, delivered the following opinion:

This case comes up upon a demurrer alleging that the complainant does not show any liability upon the part of the de-

Maysonet v. La Sucesion de Pedro Esteban Zamorano.

fendant, and that it does not show whether the defendant is the succession of certain individuals named.

1. The second ground must be overruled because it is clear from the whole complaint that the suit is on a debt of the decedent, and that the defendants are sued as having inherited property from him. Under the civil law an heir cannot inherit property and limit his liability without having taken advantage of the rule as to benefit of inventory. So far as appears there was no benefit of inventory claimed.

2. The point raised as to legal liability of the defendants deserves fuller consideration. In the continental United States the rule is that after the death of anyone, his administrator publishes a notice that claims must be presented within a period; generally twelve months, and if not so presented they will be barred by law. This is called the Statute of Nonclaim. If not so presented, they are, with certain exceptions as to those not yet due, barred from all participation in the decedent's property, which goes to his heirs or legatees unencumbered.

But this, however convenient, is not the civil law, and indeed it may be remarked that it cannot be said to be common law. No such provision is found even in Blackstone's Commentaries. The provision in question is an American statutory development, largely of the last century. Much can be said as to its convenience, but it is an instance of development in environment which is completely modern.

Under the Roman law not only was the living family a unit, but the death of the head made little difference. The persona of the dead man still survived in his heirs, and the property he left was in their hands equally liable for his debts as in his lifetime. Indeed, originally the heir must assume the inherit-

Maysonet v. La Sucesion de Pedro Esteban Zamorano.

ance regardless of his will.    The unity of the family was pre-
served long after the original cause, the worship of ancestors,
disappeared.    The pretor, however, allowed the heir the right
to reject the inheritance.    Inst. II., 19.2.    The right of in-
ventory, so that the heir could judge whether or not to accept
possession, was first allowed by Hadrian, Inst. II., 19.5.    This,
therefore, is an old rule of law, probably even antedating that
of prescription, which was likewise allowed by the pretor and
first in legislation by Honorius, Theodosius, and Justinian.
Inst. II., 6, pr.; Code Justinian, VII., 39.3; Inst. II., VI.
Accordingly, at Roman law a man's property was liable for his
debts up to the limit of the prescription, and his death made no
difference one way or another, except in the convenience of get-
ting at the possessor.

The canon law came to take charge of estates and particularly
of wills because of the influence of the church at death and in
connection with wills, and this tendency continued in England
even after that country became Protestant.    There grew up the
practice of administration of the estates of decedents, which
came to have for its object the payment of debts of the deced-
ent, and the American development of this has been the fixing
of a period for the payment of these debts, which has come to be
known as the Statute of Nonclaim.    The origin of the adminis-
trator is not clearly known, but it certainly was not a civil law
practice, and it has come to prevail only to a limited extent in
civil law countries, as in the Code of Civil Procedure of Spain.
It has been enacted in Porto Rico only in 1905, by the act re-
lating to special legal proceedings of March 9.    Under § 27
of this act administration is granted to one, who takes possession
of the property of the estate (§ 34) and § 61 provides a news-

Maysonet v. La Sucesion de Pedro Esteban Zamorano.

paper notice for the presentation of claims. The only penalty, however, for not filing such a claim is that the administrator is not liable for assets which he had paid out on claims or bequests, in which case, however, the claimant may (§ 63) further proceed against an heir who accepts his share in the succession. These heirs may accept the inheritance with benefit of inventory without liability above what is shown in the inventory.

This being so, the nonpresentation of her claim did not debar the plaintiff herein for suing, although it would protect the administrator while the succession was open.

The demurrer, therefore, is not well taken, as this suit is brought not against the administrator, but against the succession.

The demurrer must therefore be overruled, and it is so ordered.